UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Karen S. Scott, | Case No.: 16cv1773-W-BGS |
|---|---|
| Plaintiff, | |
| | **REPORT AND** |
| v. | **RECOMMENDATION: DENYING** |
| | **PLAINTIFF'S MOTION FOR** |
| Carolyn W. Colvin, Acting Commissioner | **SUMMARY JUDGMENT [ECF No.** |
| of Social Security, | **15] AND GRANTING** |
| Defendant. | **DEFENDANT'S CROSS-MOTION** |
| | **FOR SUMMARY JUDGMENT [ECF** |
| | **No. 18]** |

## I. INTRODUCTION

On July 8, 2016, Plaintiff Karen S. Scott ("Plaintiff") filed a complaint pursuant to the Social Security Act, 42 U.S.C. § 405(g), challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of disability insurance benefits and supplemental social security income. (ECF No. 1.) On October 28, 2016, the Commissioner filed an answer. (ECF No. 11.) On December 28, 2016, Plaintiff filed a motion for summary judgment, requesting reversal of the Administrative Law Judge's ("ALJ") final decision. (ECF No. 15.) Specifically, Plaintiff seeks reversal of the ALJ's denial or, in the alternative, remand for further administrative proceedings on the basis that the ALJ failed to articulate legally sufficient reasons for rejecting Plaintiff's limitations testimony. (*Id.*)

On January 23, 2017, the Commissioner filed a cross-motion for summary judgment and a response in opposition to Plaintiff's motion. (ECF Nos. 18 and 19.) The Commissioner argues that the ALJ's decision was supported by substantial evidence, is free from legal error, and should be affirmed. *Id.* Plaintiff did not file a reply in support of her motion for summary judgment or an opposition to the Commissioner's cross-motion for summary judgment.

Pursuant to Civ. L.R. 7.1(d)(1), the Court finds the parties' cross-motions suitable for decision on the papers and without oral argument. After careful consideration of the administrative record and the applicable law and for the reasons discussed below, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Commissioner's cross-motion for summary judgment be **GRANTED**.

## II. LEGAL STANDARDS FOR DETERMINATION OF DISABILITY

In order to qualify for disability benefits, an applicant must show that: (1) he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A). An applicant must meet both requirements to be "disabled." *Id.* The applicant has the burden to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

The Secretary of the Social Security Administration set forth a five-step sequential evaluation process for determining whether a person has established his or her eligibility for disability benefits. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The five steps in the process are as follows:

1. Is the claimant presently performing a "substantially gainful activity"? If so, then the claimant is not disabled within the meaning of the Social Security

Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i),
404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then
the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii),
404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one or more of the specific
impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so,
then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R.
§§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past?  If so,
then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R.
§§ 404.1520(a)(4)(iv), 404.1520(e), (e), 416.920(e).

5.  Is the claimant able to do any other work?  If so, then the claimant is not
disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R.
§§ 404.1520(a)(4)(v), 404.1520(f), 416.920(f).

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

In steps one through four, the claimant bears the burden of proof to establish that he
is disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996); *see Parra v. Astrue*,
481 F.3d 742, 746 (9th Cir. 2007) (finding that the claimant bears the burden "to establish
[his] entitlement to disability insurance benefits" at all times).    At step five, the
Commissioner bears the burden of proof to demonstrate that the claimant is not disabled.
*Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (stating that
the burden shifts to the Commissioner at step five to show that claimant can do other kinds
of work).  The Commissioner must show that the claimant can perform other work that
exists in significant numbers in the national economy by "taking into consideration the
claimant's residual functional capacity, age, education, and work experience."  *Tackett v.
Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1566 (describing
"work which exists in the national economy").  If the Commissioner meets this burden,

then the claimant is not disabled.  *Bustamante*, 262 F.3d at 954.  However, if the Commissioner fails to meet this burden, then the claimant is disabled.  *Id.*

## III. BACKGROUND

On June 13, 2012 Plaintiff filed an application under Title II for disability insurance benefits and an application under Title XVI for supplemental security income, alleging disability beginning June 4, 2012.  (Administrative Record ["AR"] 163-75.)  Plaintiff's claims were denied initially on September 28, 2012, (AR 45-63, 105-09), and upon reconsideration on August 22, 2013 (AR 63-88, 113-18).

Subsequently on October 3, 2013, Plaintiff requested a de novo hearing before an ALJ.  (AR 121-22.)  On June 20, 2014, the ALJ, Michael Radensky conducted a hearing ("ALJ Hearing").  (AR 17-44.)  Plaintiff appeared, represented by Bill Latour and Chris Davis.  (AR 19, 92.)  Kristan Cicero, an impartial vocational expert ("VE"), also testified.  (AR 38-42.)  In a decision dated September 25, 2014 ("ALJ Decision"), the ALJ found that Plaintiff was not disabled as defined by the Social Security Act.  (AR 89-104.)  Following the ALJ's adverse decision, Plaintiff timely filed a Request for Review with the Social Security's Appeals Council.  (AR 15-16.)  Plaintiff submitted contentions and additional medical records in support of the Request for Review, which the Appeals Council considered in denying Plaintiff's request of the ALJ Decision.  (AR 4, 244, 523-620.)  When the Appeals Council declined to review the ALJ Decision on May 10, 2016, it became the final decision of the Commissioner.  (*See* AR 3-8.)  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

### A. Adult Function Report

In her Adult Function Report dated August 20, 2013, Plaintiff stated that during the day she "lays in bed or sits in a chair most of the time because she has to stay off of [her] ankle."  She uses her cane to walk and wears an ankle brace.  She states that the more she is on her ankle, the more it hurts; then she has to take pain medication which makes her sleep, so she has to stay home.  (AR 216.)  She reports that she can dress, shower, and go to the bathroom unassisted.  She gets help with the preparation of food due to her inability

to stand, and she frequently walks with a cane.  (AR 217.)  She makes frozen dinners and prepares food monthly; she used to make full course meals but no longer can.  She does laundry and cleans her room once a month.  (AR 218.)  She still drives and goes shopping for food once a month.  (AR 219.)  Additionally, she attends church regularly.  (AR 220.) She states that her condition affects her ability to lift, squat, stand, reach, walk, sit, climb stairs, her memory, concentration, and to get along with others.  She states she can walk for sixteen to twenty steps and then rests for about three to five minutes. She pays attention for five to ten minutes.[1]  (AR 221.)  She reports that she is currently living with family. (AR 216.)

### B. HEARING BEFORE THE ALJ

#### 1. Plaintiff's Testimony

At the June 20, 2014 ALJ Hearing, Plaintiff testified that she last worked in June of 2012.  At that time, she injured herself trying to pick up a patient while working as a caregiver.  As a result, she hurt her ankle and left shoulder.  She has tried to apply for other work since that time, but due to restrictions she conveyed to potential employers, she has not been hired.  (AR 20.)  She testified that she told potential employers that she is unable to lift over fifteen to twenty pounds, can only sit for a short period of time, has to get up and walk around, that her shoulder will sometimes giver her pain, and when it does, she must get up and rotate it.  She testified that those restrictions "interfere[] with . . . doing a full four or eight hour job."  (AR 21.)

Plaintiff further testified that there is a worker's compensation case pending regarding her injury, and that she is currently using food stamps and is being supported by family members.  At the time of the hearing, she was 62 years old with a Bachelor of

---

[1] In medical records dated January 22, 2014, Plaintiff's complaints that she has difficulty "wearing heels" and "dancing" are noted.  Exercising increases her pain.  (AR 414.)  Further, a list of Plaintiff's daily activities includes: activities of self-care, standing, sitting, reclining, climbing a flight of stairs, rising from a chair, completing light housework, running errands, getting in and out of a car, and making meals.  (AR 415.)

5

Science degree in business management.  (AR 21-22.)

The ALJ asked a series of questions related to Plaintiff's most recent medical records from her worker's compensation case and the fact that doctors are not placing many restrictions on her ability to sit, stand, walk, or lift/carry.  (AR 22-29.)  In response to the ALJ's assertion that Dr. Bret C. Powers cleared Plaintiff to return to work without restrictions in September 2013, Plaintiff testified that Dr. Powers "did her shoulder," wanted to perform surgery on her shoulder, and that she cannot lift her shoulders above her head.  (AR 23.)  When the ALJ noted that Dr. Powers does not place any limits on the Plaintiff based on her shoulder, Plaintiff responded that "[U]nfortunately, I can't control what they write."  (AR 23.)  Next, when asked about Dr. Baback Alavynehad's treatment of her ankle and the fact that he had cleared Plaintiff to return to work at a sit down job (*see* AR 35 [citing Ex. 4-F]), Plaintiff testified that "she did surgery on my ankle" and that her "ankle did not heal the way it was supposed to."  (AR 23.)

The ALJ then asked Plaintiff about how given the aforementioned opinions and two other medical opinions that restricted Plaintiff to (1) "no speed walking" and limited her lifting to twenty-five pounds and (2) limited her lifting to twenty-five pounds and restricted her standing and walking to no more than six hours in an eight hour day, what stops her from being able to perform her past customer service job.  (AR 24.)  Plaintiff testified that she cannot get up and get records quickly and her foot has to be elevated.  Further, that they would not fix her desk if she had to move desks by moving her computer for her.  (AR 22, 24.)  The ALJ then noted that none of the opinions say that her foot has to be elevated.  (AR 24.)  Later at the ALJ hearing, Plaintiff's counsel clarified that as documented in Exhibit 5-F, she had been experiencing ankle swelling and was told to elevate her ankle during the day.  (AR 35 [citing Ex. 5F at 5-7].)  Counsel admitted that this was not a "strict diagnosis", but it is a "recommendation."  (AR 35.)

Plaintiff testified that Dr. Alavynehad referred her to a pain specialist, Dr. Raafat N. Mattar, who she was currently seeing at the time of the ALJ Hearing.  (AR 25-26.)  Further, Plaintiff testified that Dr. Alavynehad told her the she could not go back to being a

customer service representative because of the pain she was suffering. She noted that "he was pleased with the range of motion" and "was hoping that maybe after a year or two [the pain] would go away, but it did not." She testified the "pain is still there and the range of motion has gotten worse." (AR 25-26.) Further, she testified that because she only has one kidney, she is unable to take anti-inflammatory medication so her ankle stays swollen – the more she walks or does things in a standing position, the more it swells up. (AR 26.) She testified that Dr. Mattar referred her to an orthopedic doctor for a second opinion who wants to have an MRI performed, it has not taken place yet as "the insurance company is slow to okay" it. She further testified that physical therapy "didn't do anything" and acupressure made the ankle worse. (AR 26.)

Plaintiff testified that "if I was in a position where I really could do the work as a customer service rep and have my feet in a sitting position, because that is what is expected, then I would do it." (AR 27.) Further she stated that being 62 and coming in with restrictions to work does not look good on an application. (AR 27.) She admitted that she "wasn't aware of some of the things [her doctors] said because it's not what they said to" her. (AR 28.) She also stated she cannot wear any other shoes besides flat shoes, and that she in essence does not think that appropriate in a work environment. (AR 28-29.) She wears an ankle brace all the time. (AR 29.)

Plaintiff was given a gel anti-inflammatory, Voltaren, and Norco for pain. She stated that Norco "puts [her] to sleep, which would be difficult to take during the day and do a job because you would feel sleepy after you take it." (AR 29.) She has been prescribed Voltaren gel and Gabapentin. (AR 29-30.) She testified that the Voltaren gel has not started helping yet, but that she will "give it time." She testified her next appointment with pain specialist Dr. Mattar was scheduled for July, and she hopes the MRI will be approved by insurance so that "he'll know a better way to treat [her] pain." (AR 31.)

Plaintiff testified that she lives by herself and her children check in on her. She drives and does her own laundry. She does not cook, and instead buys frozen meals. She does her own grocery shopping because she is able to "lean on the shopping basket to do

7

what I got to do." She testified that she reads about three to four hours a day. She meditates forty-five minutes a day. She goes to church every Sunday and has a young dog whose poop she picks up in the backyard. She testified that her dog "was a pup" when she got him, around a year and half to two years before the ALJ Hearing.[2] (AR 31-35.)

Plaintiff testified that as far as osteoarthritis, she only experiences major joint pain throughout the body "only if [she has] been overdoing it." (AR 36.) For example, after going to two to three different stores, when she returns home "that's when [she feels] like the real pain." (AR 36.) She testified that she then puts her groceries away, elevates her ankle, ices it, takes her medication, and goes to sleep. Further, she testified that this is why she does not "indulge in cooking" frequently, as she would be on her feet, and due to her habit of washing her pots and pans as she goes, she is on her feet so much that it makes her ankle hurt "like someone just comes up and just kicks [her] in the back of [her] ankle." (AR 36.)

Plaintiff was given an ankle wrap, which she always wears. If she does not wear it, "sometimes [her] ankle will just give out." (AR 37.) She testified she would not be able to be on her feet for four hours during an eight hour day. She stated she could stand for at most five to ten minutes, and then she would need to elevate her ankle. (AR 37-38.) She does not use cortisone shots in her ankle; they only work in her shoulder. (AR 38.)

## 2. Vocational Expert Testimony

The ALJ also called Vocational Expert Kristan Cicero ("VE") to testify. (AR 38.) The VE testified as to Plaintiff's past work and stated that Plaintiff has worked as: (1) a home attendant (Dictionary of Occupational Titles Code 354.377-014), which is classified as a medium, semi-skilled position; (2) a massage therapist (Dictionary of Occupational Titles Code 334.374-010), which is classified as a medium, semi-skilled position, but the job was heavy as performed by Plaintiff; and (3) a customer service representative (Dictionary of Occupational Titles Code 241.367-014), which is classified as a sedentary,

---

[2] Thus, Plaintiff began caring for this young dog *after* her alleged disability onset date of June 4, 2012.

skilled position, but the job was medium as performed by Plaintiff. (AR 39.)

The ALJ asked the VE four hypotheticals to determine whether an individual would be able to return to any of Plaintiff's past positions "who is closely approaching retirement age, has a Bachelor's degree and the past work that [the VE] just identified." (AR 40.) Under the first hypothetical, in which the individual is limited to light work, standing and walking four hours in an eight hour day, occasional postural activities, "no ladders, scaffolds, or ropes; occasional above shoulder reaching with the left upper extremity; avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants; no unprotected heights or dangerous machinery," the VE testified that the individual could perform the customer service representative position as generally, but not actually performed. (AR 40-41.) Under the second hypothetical, if the individual's ability to stand and walk was limited to two hours in an eight hours day, the VE testified that would not affect the individual's ability to perform the customer service job as normally performed. (AR 41.) Under the third hypothetical, if the individual was allowed to elevate her foot about six inches off the floor on an as needed basis, the VE testified that would not affect the individual's ability to perform the customer service job as normally performed. (AR 41.) Finally, in the fourth hypothetical the VE opined that if an individual needed an additional ten minute break once per hour in addition to regularly scheduled breaks to alleviate pain and swelling, she would not be able to maintain employment. (AR 41.)

IV.   ALJ's FINDINGS

On September 25, 2014, the ALJ issued his decision denying Plaintiff's application for a period of disability and disability insurance benefits as well as her application for supplemental social security income. (AR 89.) In arriving at his decision, the ALJ applied the Commissioner's five-step sequential disability determination process set forth in 20 C.F.R. § 416.920(a). (*See* AR 93-94.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Accordingly, the ALJ found that Plaintiff satisfied step one. (AR 94.)

At step two, the ALJ found that Plaintiff suffered from the following severe

impairments: (1) history of right ankle injury; (2) migraine headaches; and (3) back pain. Thus, with regard to Plaintiff's listed severe impairments, the ALJ found that Plaintiff satisfied step two. (AR 94.) The ALJ considered Plaintiff's alleged symptoms of depression and rejected it as a medically determinable impairment. (AR 95.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under medical listing 20 C.F.R. Part 404, Appendix 1 to Subpart P. Specifically, the ALJ noted that no treating or examining physician identified findings equivalent in severity to the criteria of any listed impairments. The ALJ, therefore, proceeded to step four. (AR 95.)

The fourth and fifth steps require the ALJ to determine how the claimant's impairments affect the claimant's ability to perform work. To make this determination, the ALJ formulates the claimant's Residual Functional Capacity ("RFC") assessment. The RFC is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work. *See* 20 C.F.R. § 404.1545(a)(1) (defining an RFC as "the most [a claimant] can still do despite [his or her] limitations"). An RFC is used "at step five to determine whether an individual is able to do other work, considering his or her age, education, and work experience." Social Security Ruling ("SSR") 96-8p.

Here, the ALJ found Plaintiff had the RFC to perform "light work" as defined in 20 CFR § 404.1567(b) and § 416.967(b)[3] except "standing/walking is reduced to four hours out of an eight-hour day. Occasionally, the claimant can perform postural activities but no ladders, scaffolds, or ropes. The claimant can occasionally perform above shoulder reaching with the left upper extremity, but she should avoid concentrated exposure to

---

[3] Pursuant to both 20 C.F.R. § 404.1567(b) and § 416.967, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

16cv1773-W-BGS

extreme cold, vibration, pulmonary irritants, and there should be no unprotected heights or dangerous machinery." (AR 95.) The ALJ noted that "in making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. . . . ." (AR 95.)

The ALJ summarized Disability Reports provided by Plaintiff on which she claimed that she was unable to work due to an injury to her left shoulder and ankle, as well as depression and chronic migraines. (AR 96 [citing Exs. 2E and 5E].) Due to these conditions, she alleged she had difficulty "lifting, squatting, standing, reaching, walking, sitting, climbing stairs, completing tasks, concentrating, understanding, and getting along with others." (AR 96 [citing Ex. 5E].) In developing the RFC, the ALJ found Plaintiff's statements "not entirely credible" with respect to the intensity, persistence and limiting effects of her allegedly disabling impairments for the following reasons. (AR 96.)

First, the ALJ stated that her daily activities of driving, shopping, cooking, cleaning, reading, writing, caring for her small dog, and attending church on a weekly basis, were inconsistent with the debilitating symptoms alleged and that "the physical and mental abilities as well as social interactions required to perform these activities show some ability to work." (AR 96.) Specifically, the ALJ found that Plaintiff's claimed drowsiness as a side effect from the use of medication is (1) not documented in the medical records and (2) inconsistent with her testimony that she continues to drive. Further, her ability to drive contradicts her alleged impairment of an inability to concentrate. (AR 96.)

Second, the ALJ found that Plaintiff's "limited work history before the alleged disability onset date raises questions as to whether the claimant's current unemployment is actually the result of her medical problems." (AR 96 [citing Ex. 6D].)

Third, the ALJ found that the Plaintiff's credibility as to the severity of her symptoms and limitations to be diminished because those allegations were not supported by objective medical evidence in the record. (AR 96-99.) The ALJ recounted that the claimant "reportedly sustained a work-related injury to her right ankle and left shoulder when she

11

lifted her daughter who had fallen" in June 2012.  (AR 97.)  He noted that the record indicated she also suffered from chronic migraines and back pain.  Citing Exhibits 1F, 2F, 7F, and 8F, the ALJ noted that Plaintiff "had a limited and painful range of motion of the left shoulder and her grip strength with her left hand was reportedly zero pounds."  (AR 97.)  An MRI of her left shoulder showed a possible superior posterior labral tear, but her rotator cuff appeared intact (AR 97 [citing Ex. 7F].)  Critically, the ALJ highlighted that a treating physician noted Plaintiff made "questionable effort" during her grip strength testing.  (AR 97 [citing Ex. 7F].)  As to her ankle, the ALJ stated the claimant reportedly "had a right antalgic gait" and "wore an ankle brace and used a cane in her right hand."  Citing Exhibits 2F, 7F, 8F, and 9F, he noted there was no swelling but tenderness to palpitation over several ligaments coupled with a limited range of motion.  An MRI revealed a chronic anterior talofibular ligament tear, osteonecrosis of the talar dome, and chronic tear of the perponeus longus.  (AR 97.)

At a September 2012 orthopedic consultative examination by Dr. Vicente Bernabe, Plaintiff complained of ankle, shoulder, and back pain, but ambulated without her cane, instead just carrying it in her hand.  The doctor opined that it was not a medical necessity, full range of motion of the spine without pain.  Examination of Plaintiff's left shoulder revealed positive impingement sign with pain and crepitus at the acromioclavicular joint; examination of the right ankle showed tenderness to palpitation, but otherwise normal range of motion.  Dr. Bernabe opined that claimant could carry fifty pounds occasionally and twenty-five frequently, walk/stand six out of eight hours a day, and could occasionally perform overhead motion with the left upper extremity.  (AR 97 [citing Ex. 1F].)

In April 2013, Plaintiff underwent surgery to repair her ankle injury.  (AR 97-98 [citing Ex. 3F].)  Following this surgery, in June 2013 Plaintiff's treating physician Dr. Alavynejad "reported that the claimant did not walk with a limp," "had mild tenderness to palpation", "4/5 muscle strength" and "good range of motion." (AR 98 [citing 4F].)  By August 20, 2013, Plaintiff had "5/5 muscle strength, full range of motion of the ankle joint, and no tenderness to palpitation."  (AR 98 [citing 9F].)

16cv1773-W-BGS

Additionally, in developing Plaintiff's RFC the ALJ considered numerous medical opinions, several of which were treating or examining physicians who cleared Plaintiff to return to work with varying restrictions in place over the course of her recovery. He noted that in June 2013, Dr. Alavynejad opined that Plaintiff could return to work in a "sit down job," limited to standing or walking for four hours out of an eight hour day, and could life, push, and pull up to ten pounds. (AR 98 [citing Exs. 4F and 5F].) The ALJ specifically noted that Dr. Alavynejad did not "indicate that elevating [her] ankle was necessary." (AR 98 [citing Ex. 5F].) In August 2013, Dr. Alavynejad assessed that Plaintiff could return to work with "limited standing and walking for six hours a day and lifting, pulling, and pushing no more than twenty-five pounds." In October 2013, he added the limitation that Plaintiff could not speed walk. (AR 98 [citing Ex. 9F].) A physician's assistant under the supervision of Dr. Paul Kim opined that Plaintiff could return to a sit down job with standing or walking restricted to five hours a day. (AR 98 [citing Ex. 7F].) The ALJ gave "some weight" to these medical opinions because these professionals examined the Plaintiff. However, he adopted specific restrictions "on a function-by-function basis that are best supported by the objective evidence as a whole as well as generously accommodating [Plaintiff's] subjective complaints." (AR 98.) Critically, the ALJ noted that "the objective medical evidence does not show that [her] recovery time lasted 12 continuous months." (AR 98.)

Further, the ALJ considered Dr. Bret C. Powers' various opinions documented throughout the course of her recovery, spanning from Plaintiff being restricted to lifting, pushing, and pulling ten pounds, no overhead work, and no prolonged standing and walking (citing Ex. 7F) to his ultimate conclusion that Plaintiff could return to work "without restriction" (citing Ex. 8F) . (AR 98-99.) Again, the ALJ gave Dr. Powers' opinions "some weight", as the ten pound weight restriction was overly restrictive in light of overall evidence. However, he gave "no weight" to Dr. Powers' opinion that Plaintiff could return to work without any restrictions. (AR 99.)

The ALJ gave little weight to the opinions of state agency medical consultant and

16cv1773-W-BGS

orthopedic consultative examiner at the initial level as evidence received after they rendered their opinions showed Plaintiff was more limited than they originally determined (citing Exs. 2A, 4A, 1F]), and he found the opinions regarding Plaintiff's "temporarily totally disabled" in the context of her workers' compensation case were irrelevant and inapplicable under Social Security Act standards. (AR 99.) He did consider all objective clinical and diagnostic evidence used by physicians in reaching that conclusion however.

The ALJ gave "great weight" to the state agency medical consultant opinion at the reconsideration level because the medical consultant was able to review additional evidence that the consultant did not have at the initial level. After reviewing this evidence, the medical consultant opined Plaintiff could perform work at the "light exertional level." (AR 99.) The ALJ concluded that "the evidence as a whole supports the RFC assessed by this decision" as the "objective findings, treatment records, consultative examination and State Agency consultants' opinions, support a finding that the claimant is not disabled." (AR 99.)

Finally, the ALJ considered the VE's testimony as described above and concluded that Plaintiff is capable of performing her past work as a customer service representative, classified as a sedentary exertional level occupation by the Dictionary of Occupational Titles and as a medium exertional level occupation as described by Plaintiff. Of note, the ALJ found that Plaintiff "would be able to perform the past relevant work of customer service representative as generally performed in the regional and national economy, but not as actually performed" by Plaintiff. (AR 99-100.) The ALJ found that this work "does not require the performance of work-related activities precluded by [Plaintiff's RFC]." (AR 99.)

He therefore concluded that Plaintiff is "not disabled" as defined by the Social Security Act. (AR 100.)

## V.     SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision. 42 U.S.C. § 405(g). The scope of judicial review

is limited. *See id.* This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision. *See id.*; 20 C.F.R. § 404.900(a)(5). The matter may also be remanded to the Social Security Administration for further proceedings. 42 U.S.C. § 405(g).

The Commissioner's decision must be affirmed upon review if it is: (1) supported by "substantial evidence" and (2) based on proper legal standards. *Uklov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). If the Court, however, determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Substantial evidence is more than a scintilla but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding substantial evidence in the record despite the ALJ's failure to discuss every piece of evidence). Moreover, "where evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. *See Lewis*, 236 F.3d at 509. Nevertheless, the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

## VI. DISCUSSION

Plaintiff argues that the ALJ erred in failing to articulate "clear and convincing" reasons for discounting her credibility as to her subjective limitations. (ECF No. 15-1 at 3.) Specifically, she argues that (1) the ALJ sets forth boilerplate language that is insufficient as it "yields no clue to what weight the trier of fact gave the testimony" and (2) the ALJ rejected Plaintiff's testimony solely because it lacked support in the objective medical evidence. (*Id.* at 7.) She asks the Court to reverse the final decision of the

Commissioner and order the payment of benefits, or in the alternative remand for further administrative proceedings. (ECF No. 15 at 2.)

The Commissioner opposes Plaintiff's motion and cross moves for summary judgment, arguing the ALJ properly assessed Plaintiff's credibility. (ECF Nos. 18-1.) For reasons explained below,[4] the Court concludes that the ALJ articulated "specific, clear and convincing reasons" supported by substantial evidence in the record to discredit Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms.

**A. Plaintiff's Claimed Limitations and ALJ's Findings**

Regarding her claimed limitations, Plaintiff summarizes them as follows. At the hearing she testified about the nature and extent of her condition. She stopped work in June 2012 when she hurt her left shoulder and ankle picking up a patient at work who fell. (ECF No. 15-1 at 5 [citing AR 20].) She can stand for five to ten minutes, and then would need to sit down and elevate her ankle. (*Id.* [citing AR 37-38].) Plaintiff only makes microwave dinners and does not cook. (*Id.* [citing AR 32].) Plaintiff does her grocery shopping for thirty minutes once a month but must lean on the cart while doing so. (*Id.* [citing AR 32, 219].) She takes Norco and Gabapentin for pain. (*Id.* [citing AR 29-30].)

The ALJ summarized Plaintiff's claimed limitations as follows. On the disability reports the claimant alleged that she was unable to work due to an injury to her left shoulder and right ankle as well as depression and chronic migraines. (AR 96 [citing Exs. 2E and 5E].) Due to these conditions, Plaintiff purported that she had difficulty lifting, squatting, standing, reaching, walking, sitting, climbing stairs, completing tasks, concentrating, understanding, and getting along with others. (AR 96 [citing Ex. 5E].) During the ALJ Hearing, Plaintiff reported that she had tried to look for work, but due to her limitations, employers were not able to employ her. Concerning her physical abilities, she reported that she could lift up to twenty pounds, but she could only sit for a short time because her

---

[4] All relevant medical evidence cited by the ALJ is discussed only as is necessary to give context to the reasoning set forth in the ALJ Decision.

ankle needed to be elevated.  In addition to elevating her ankle, Plaintiff stated that she also put ice on her ankle, took prescribed pain medication, and wore an ankle brace.  (AR 96.)

The ALJ concluded that Plaintiff had an RFC to perform light work, except her standing/walking is reduced to four hours out of an eight hour day.  Occasionally, the claimant can perform postural activities but no ladders, scaffolds, or ropes.  She can occasionally perform above shoulder reaching with the left upper extremity, but she should avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants, and there should be no unprotected heights or dangerous machinery. (AR 95.)

## B. Relevant Law

The ALJ has a "well-settled role as the judge of credibility." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Accordingly, the ALJ's assessment of a claimant's credibility and pain severity should be given "great weight." *Dominguez v. Colvin*, 927 F. Supp. 2d 846, 865 (9th Cir. 2003) (citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986)).  The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The Ninth Circuit has established a two-step analysis for the ALJ to evaluate the credibility of a claimant's testimony regarding subjective pain and impairments.[5] *Vasquez*

---

[5] Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." *See* SSR 16-3p, 81 FR 14166-01, 2016 WL 1020935 (Mar. 16, 2016) ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."); *see also* SSR 16-3p, 2016 WL 1237954, *1 (Mar. 24, 2016) (correcting SSR 16-3p effective date to read March 28, 2016).  Social Security Rulings reflect the SSA's official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1).  Although they "do not carry the force of law," Social Security Rulings "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1);

17

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment or impairments that could reasonably be expected to produce the pain or other alleged symptoms. *Id.* Second, if the claimant satisfies the first step and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if he provides "specific, clear and convincing reasons" for doing so. *Id.*; *see also Parra*, 481 F.3d at 750 (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). These reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Smolen*, 80 F.3d at 1284)). These reasons must be supported by substantial evidence in the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

In weighing the credibility of the claimant's testimony, the ALJ may use "ordinary techniques of credibility determination." *Id.* The ALJ may consider at least the following when assessing a claimant's credibility: (1) her reputation for truthfulness; (2) inconsistencies in either her testimony or between her testimony and her conduct; (3) her daily activities; (4) her work records; and (5) testimony from physicians and third

---

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted). As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo, v. Berryhill*, No. 15-16277, 862 F.3d 987, 2017 WL 2925434, at *9 n.5 (9th Cir. July 10, 2017); *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (Posner, J.) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such *assertions* often cannot be either credited or rejected on the basis of medical evidence.") SSR 16-3p became effective *after* the issuance of the ALJ Decision in the instant case. *Compare* SSR 16-3p, 2016 WL 1237954, *1 (Mar. 24, 2016) (correcting SSR 16-3p effective date to read March 28, 2016), *with* (AR 89 [ALJ Decision dated September 25, 2014]). Nonetheless, the applicability of SSR 16-3p need not be resolved here since the ALJ's evaluation of Plaintiff's subjective limitations in this case passes muster whether SSR 16-3p or its predecessor, SSR 96-7p, governs.

16cv1773-W-BGS

parties concerning the nature, severity and effect of her condition. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c). If an ALJ's credibility finding is supported by substantial evidence in the record, then a reviewing court must not "second-guess" it. *Thomas*, 278 F.3d at 959.

Furthermore, even if one or more reasons listed by the ALJ are invalid, so long as the ALJ provides some valid reasons, his credibility determination will be upheld. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (an ALJ's citation to erroneous reasons is harmless so long as the "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence").

## C. The ALJ Properly Set Forth "Specific, Clear and Convincing" Reasons Supported by Substantial Evidence in the Record To Substantiate His Credibility Determination Regarding Plaintiff's Testimony

Plaintiff satisfied the first step of the two-step credibility analysis as the ALJ determined that she presented objective medical evidence of medically determinable impairments that could reasonably be expected to cause some of her alleged symptoms. (AR 96.) As regards step two, the ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 96.) Therefore, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for discounting Plaintiff's subjective pain and limitations testimony. *See Tommasetti*, 533 F.3d at 1039.

As to step two, Plaintiff argues that the ALJ failed to articulate sufficient reasons to find her not credible. (ECF No. 15-1 at 4.) In particular Plaintiff focuses on the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.* at 6.) Plaintiff argues this conclusory statement is wholly insufficient. *Id.* at 6-7 (citing *Bjorson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). However, Plaintiff

conveniently ignores the last phrase of that sentence, namely, "for the reasons explained in this decision." The ALJ in his decision expressly details his reasons for discrediting her testimony. Here, the ALJ did not merely provide boilerplate language. As explained below, the ALJ informed this Court in a meaningful, reviewable way of the specific evidence that he used to make his credibility determination. (*See* AR 96-98.) As such, the Court finds that the ALJ did not make a baseless, conclusory statement to discredit some of Plaintiff's testimony as Plaintiff argues. Thus, Plaintiff's first argument for summary judgment fails.

Next, Plaintiff argues that the ALJ simply rejected her testimony based on a belief that the testimony was not credible because it lacks support in the objective medical evidence which she argues is a "legally insufficient" reason. (ECF No. 15-1 at 7-8.) Further, Plaintiff argues that her description of her daily activities does not provide any indication that she can do what is required of substantial gainful work. (*Id.* at 9-11.)

Upon review of the ALJ Decision and the Administrative Record, the Court **RECOMMENDS** a finding that the ALJ properly set forth "specific, clear and convincing reasons" supported by substantial evidence in the record for discounting Plaintiff's subjective limitations testimony. The ALJ stated the following reasons for finding Plaintiff's testimony to not be credible: (1) her daily activities were inconsistent with her subjective limitations and demonstrated an ability to work, and specifically that her continued ability to drive contradicted her allegations of impaired concentration and excessive drowsiness due to medication; (2) her limited work history before the alleged disability onset date "raises questions as to whether [her] current unemployment is actually the result of medical problems"; and (3) the objective clinical and diagnostic findings in the record did not support the severity of her physical symptoms and limitations. (AR 96-99.) The Court considers the validity of the ALJ's stated reasons below.

### 1. Plaintiff's Daily Activities

An "ALJ [is] permitted to consider daily living activities in his credibility analysis." *Burch*, 400 F.3d at 681; *see also* SSR 16-3p ("In addition to using all of the evidence to

evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR §§ 404.1529(c)(3), 416.929(c)(3). These factors include: [1] Daily activities").  An ALJ may discredit a claimant's testimony when she reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Molina*, 674 F.3d at 1112-13; 20 C.F.R. § 404.1529(c)(3)(i).  Further, the inconsistency between a claimant's alleged symptoms and her daily activities, is sufficient to support a finding that Plaintiff was not entirely credible. *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether claimant engages in daily activities inconsistent with alleged symptoms"); *Molina*, 674 F.3d at 1112-13 (affirming the ALJ's adverse credibility determination where the plaintiff's symptom testimony was inconsistent with her daily activities throughout the disability period and the medical evidence).  Specifically, daily activities may be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair*, 885 F.2d at 603.  Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225; *Valentine*, 574 F.3d at 693.

In the ALJ Decision, the ALJ found that Plaintiff's alleged impairments were inconsistent with her activities of daily living and demonstrated "some ability to work." (AR 96.) Plaintiff contends that the ALJ improperly rejected Plaintiff's complaints because her alleged limitations were inconsistent with her daily activities. (ECF No. 15-1 at 9-10.) She argues that her descriptions of her activity level "fall far short of what is needed to demonstrate the capacity to perform work activity on a sustained basis" and that the ALJ ignored the fact that she can only perform activities for a short period of time before needing to rest. (*Id.* at 10)  The Commissioner in her Cross Motion reiterates the ALJ's finding as to the daily activities Plaintiff testified she was able to do, noting that inconsistencies between activities of daily living and assertions of fully disabling

limitations are a valid reason to discount Plaintiff's testimony. (ECF No. 18-1 at 5 [citing *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012)].)

Other than the contention that Plaintiff can only do daily activities for short periods of time before needing rest, she does not point to anything else in the record that would contradict the ALJ's finding that she can do the daily activities he listed in the ALJ Decision. Further, she does not identify in the record which of the daily activities she can do for only short periods of time before needing rest. Nor does she indicate for which of her alleged disabilities she needs the rest. Thus, Plaintiff does not refute that she is in fact able to engage in the activities the ALJ identified in his Decision. (*See* AR 96.)

In evaluating Plaintiff's activities of daily living, the ALJ noted that despite her alleged limitations, she continues to drive, shop, cook, clean, read, write, care for her small dog, and attend church on a regular basis. Critically, the ALJ made these findings based on an Adult Function Report completed *by Plaintiff* and based on *her own testimony* at the ALJ Hearing. (AR 96 [citing Ex. 5E].) Plaintiff is able to engage in all of these activities *despite* the limitations noted in the Adult Function Report and at the ALJ Hearing. As such, the Plaintiff's activity level suggests she had a greater overall functional capacity then she alleged.

Plaintiff raises the issue as to whether the ALJ ignored, or did not consider, Plaintiff's testimony that she could only do these daily activities for a short period of time before needing to rest. The Court notes that Plaintiff does not connect for which of the severe impairments, right ankle injury, left shoulder injury, migraine headaches, and/or back pain, she needed to rest. Nor does Plaintiff address where in her testimony she has so stated. Therefore, the Court will review her testimony at the hearing as regards her daily activities.

Plaintiff claims she cannot do her past customer service job because one of the duties is to go and get records, which she is unable to do so quickly because her foot has to be elevated. (AR 24.) Because she has only one kidney, she cannot take anti-inflammatory medication, so her ankle stays swollen. The more she walks, or does things in a standing

position, the more it will swell. (AR 26.) She takes Norco for pain, which puts her to sleep. It would be difficult to take during the day and do a job because she would feel sleepy after she took it. (AR 29.) She lives by herself, drives, does her laundry, and buys microwave dinners, but otherwise does not cook. (AR 31-32.) She does her grocery shopping because she can lean on the shopping basket. She spends three to four hours reading, and meditates for about forty-five minutes each day. (AR 32-33.) She goes to church every Sunday. (AR 33.) She has a dog, and cleans up his poop in her back yard. (AR 34.) As regards to experiencing joint pain throughout her body, she testified that:

> If I like have to go out to the grocery store and I'm going to a number of, two or three different stores, when I get back home, that's when I feel like the real pain. I'll go home and put my groceries away and go to bed. I elevate my ankle, I put ice on it and I take my medication and I'm probably going to go to sleep because I've overdone it, and I know I've overdone it.

(AR 36.) She adds that she does not indulge in a lot of cooking, because she is on her feet to cook. She washes pots and pans as she goes. As soon as she makes a dish, she takes it out of the pot and washes it. Being too long on her feet makes her ankle hurt. (AR 36.) Due to her ankle issue, she states she could stand for about maybe five, ten minutes and then she would need a chair or something to elevate her ankle. (AR 37-38.)

Based on a review of this testimony, Plaintiff's main, and appears only, claim in regards to needing to rest, is due to the pain she feels in her ankle from being on her feet for too long. As she stated, if she overdoes it by shopping too long, or standing on her feet to cook and clean pots for too long, her ankle hurts, and she needs to elevate it. She would also ice it and take pain medication.

Contrary to Plaintiff's contention that the ALJ ignored her testimony regarding her ankle pain and her need to elevate it, he specifically addressed her claimed limitation in the ALJ Decision. According to the ALJ, following Plaintiff's right ankle surgery, in August 2013 Dr. Alavynejad opined that she had 5/5 muscle strength, full range of motion of the ankle joint, and no tenderness to palpation. (AR 98 [citing Ex. 9F].) Nonetheless, the ALJ considered Plaintiff's subjective complaints related to this condition and factored them into

her RFC by limiting her to light work with additional limitations, such as standing/walking only four hours out of an eight hour day.  Notably he stressed that although she reported that she elevated her ankle to reduce her pain, Dr. Alavynejad did not indicate that elevating the ankle was necessary.[6]  (AR 98 [citing Ex. 5F].)  The Court notes that Dr. Alavynejad in August 2013 opined that Plaintiff could return to work with limited standing and walking for six hours a day.  Further, a physician's assistant under the supervision of Dr. Paul Kim, opined that Plaintiff could return to a sit down job with standing or walking up to five hours a day.  (AR 98 [citing Ex. 7F at 7-11].)

Next, Plaintiff contends that nothing in her testimony provides any indication that she is capable of performing anything other than a few basic daily activities and not what is required of substantial gainful work activity.  (ECF No. 15-1 at 10.)  She argues that descriptions of her activity level falls far short of what is needed to perform work activity on a sustained basis.  (*Id.*)  Plaintiff does not elaborate as to why the daily activities to which she testified she can perform are consistent with her alleged limitations.  Nor does she address the ALJ's finding that some of the physical and mental abilities as well as social interactions required to perform these daily activities show some ability to work, and are not consistent with the debilitating symptoms she alleges.  (*See* AR at 96.)

The apparent inconsistency between a Plaintiff's alleged limitations and her daily activities is sufficient to support a finding that a Plaintiff was not entirely credible.  *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether Plaintiff engages in daily activities inconsistent with alleged symptoms").  Daily activities may be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  *Fair*, 885 F.2d at 603.  Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's

---

[6] Further, as noted above, the VE testified during the ALJ Hearing that if Plaintiff were to elevate her foot about six inches off the floor on an as needed basis, it would not affect her ability to perform the customer service job as normally performed.  (AR 41.)

testimony to the extent that they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225; *Valentine*, 574 F.3d at 693.

Plaintiff testified that she could stand for about maybe five, ten minutes and then she would probably have to be given a chair to elevate her ankle as she could not stand that long. (AR 37-38.) Further she claimed that due to the degree of ankle pain caused by prolonged standing, she has to take medication that then puts her to sleep. (*See* AR 36 ["I elevate my ankle, I put ice on it and I take my medication and I'm probably going to go to sleep because I've overdone it, and I know I've overdone it."].) She further testified that she cannot do her customer service job because one of the duties is to go and get records, which she is unable to do "that quickly because her foot has to be elevated." (*See* AR 24.) She could only sit for a short time because her ankle had to be elevated. (AR 96.)

The ALJ found that her continuing to drive, shop, cook, clean, read, write, care for her small dog, and attend church on a regular basis are not consistent with the debilitating symptoms she alleges. Some of the physical and mental abilities as well as social interactions required to perform these activities show some ability to work. (AR 96.) Further, the ALJ noted that Plaintiff's claims of drowsiness and impaired concentration due to the use of pain medication were directly contradicted by Plaintiff's testimony that she continued to drive.[7] (AR 96.)

The Court agrees that these daily activities are at least in part inconsistent with Plaintiff's claimed debilitating symptoms. For instance, she states she can only stand for five to ten minutes, and sit for a short while before having to raise her leg. Yet Plaintiff is able to drive and attend church service every week, which entails sitting and standing for

---

[7] Although not addressed in her Motion for Summary Judgment, Plaintiff submitted a list of objections dated February 2, 2015 to the Appeals Council during their review of the ALJ Decision. In these objections, she states that she "does not drive continuously" or "when taking strong medications." (AR 244.) As noted by the Commissioner, this was not stated at the ALJ Hearing (*see* AR 31), medical notes indicated no side effects or problems from medications (*e.g.*, AR 379, 403) and she repeatedly denied side effects from medications (*e.g.*, AR 548, 550, 559). Based on the entirety of the record, the Court does not find that this clarification undermines the ALJ's determination that Plaintiff's daily activities are inconsistent with her alleged limitations. *See Carmickle*, 533 F.3d at 1162.

longer periods of time. She also drives and shops at stores, sometimes going to two or three at a time. Such activity is inconsistent with her claimed limitation and indicates she can stand and sit for longer periods of time than she alleges. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1991) (holding that an indication that a Plaintiff is able to take care of personal needs, prepare meals, do easy housework, and shop for groceries can be seen as inconsistent with a condition that precludes all work activity); *Burch*, 400 F.3d at 681 (stating that the ALJ may discredit Plaintiff's testimony if he engages in daily activities involving skills that could be transferred to the workplace). Additionally, Plaintiff testified she spends several hours a day reading, contradicting her alleged inability to concentrate. (*See* AR 32-33.) Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225; *Valentine*, 574 F.3d at 693. Thus, Plaintiff's self-described ability to perform the above detailed daily activities is not only inconsistent with her alleged limitations, but also, as the ALJ found, tends to indicate that she can perform the duties required of a customer service representative[8] as generally performed. (*See* AR at 96, 99-100.)

Therefore, **IT IS RECOMMENDED** that the Court find the ALJ provided a "specific, clear and convincing" reason supported by substantial evidence for discounting Plaintiff's credibility as to her subjective limitations on this ground. *See Lingenfelter*, 504 F.3d at 1040 (inconsistency between a claimant's alleged limitations and her daily activities is sufficient to support a finding that Plaintiff was not entirely credible); *Molina*, 674 F.3d at 1112 (daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration).

### 2. Prior Work History

An ALJ may properly consider a claimant's poor or nonexistent work history in making

---

[8] As reported by Plaintiff, at her past customer service position, she walked for an hour a day, stood for an hour a day, and sat for seven hours a day. When asked to explain what she lifted and carried, she responded "N/A worked in front of a computer." (AR 212-14.)

a negative credibility determination. *Thomas*, 278 F.3d at 958-59 ("The ALJ may consider at least the following factors when weighing the claimant's credibility: . . . [her] work record . . . ."); 20 C.F.R. § 404.1529 (prior work history can be considered in assessing credibility); 20 C.F.R. § 416.929 (same); *see, e.g.*, *Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015) (noting that claimant's "limited work history also detracts from the credibility of her subjective allegations" and that the ALJ's consideration of this factor was proper); *Aarestad v. Comm'r of Soc. Sec. Admin.*, 450 Fed App'x 603, 604 (9th Cir. 2011) (unpublished) (affirming ALJ's determination of claimant's testimony as partially not credible where claimant "worked only sporadically before the alleged onset of disability (which suggests that her decision not to work was not based on disability)"); *Burkstrand v. Astrue*, 346 Fed. App'x 177, 179 (9th Cir. 2009) (unpublished) ("limited work history" negatively impacted credibility).

Here, the ALJ found that Plaintiff's "limited work history before the alleged ability onset date raises questions as to whether the claimant's current unemployment is actually the result of her medical problems."[9]  (AR 96 [citing Ex. 6D].)  The ALJ relied on Plaintiff's Summary FICA Earnings For Years Requested (AR 187), which reflects Plaintiff's limited earnings and periods of unemployment prior to Plaintiff's alleged disability onset date of June 4, 2012.  Thus, the ALJ was entitled to determine from Plaintiff's pre-disability period work history that she lacked motivation to work.  *See Thomas*, 278 F.3d at 959 (approving rejection of claimant's credibility when the claimant had an "extremely poor work history" reflecting "little propensity to work in her lifetime" — i.e., where a claimant's "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability").  The ALJ here was entitled to discount Plaintiff's credibility based on her inconsistent work history prior to her alleged on-set date, calling into question whether her current unemployment is actually the result of her

---

[9] Notably, Plaintiff did not take issue with the ALJ's use of her limited work history as a reason to discredit her testimony in her briefing.

medical conditions.  (AR 96.)

Accordingly, it is **RECOMMENDED** that the Court find the ALJ properly set forth a "specific, clear and convincing" reason supported by substantial evidence for discounting Plaintiff's credibility as to her subjective limitations on this ground.

### 3.  Medical Evidence

When an ALJ finds that medically determinable impairments could reasonably be expected to cause a claimant's alleged symptoms, the ALJ may not reject a claimant's testimony solely based a lack of support of medical evidence.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (finding that an ALJ cannot reject a claimant's testimony simply because it is unsupported by objective medical evidence); *Burch*, 400 F.3d at 681. However, when assessing a claimant's credibility, the ALJ may consider inconsistent medical evidence as a factor in his credibility analysis.  *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence"); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ properly relied on objective findings and physician's opinions to discredit claimant's testimony regarding functional limitations).

Further, an ALJ may consider medical opinions about the nature, severity, and effect of symptoms in evaluating the credibility of a plaintiff's statements.  *See Smolen*, 80 F.3d at 1284.  Such medical opinions are probative evidence when weighing the credibility of subjective complaints.   20 C.F.R. § 416.929(c)(3) (describing factors relevant to credibility); *see also Rollins*, 261 F.3d at 857 (noting that the ALJ appropriately considered medical opinions contradicting claimant's pain testimony in assessing credibility).

Plaintiff alleges that the ALJ rejected her testimony based on his belief that the testimony was not credible because it lacks support in the objective medical evidence.

(ECF No. 15-1 at 7.) She argues that the ALJ's rejection of her testimony for this reason is always "legally insufficient." *Id.* at 7-8 (citing *Reddick*, 157F.3d at 722). Given the ALJ's statement that "[t]he positive objective clinical and diagnostic finding since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein", however, the Commissioner stresses that contradictions between alleged impairments and the medical record are a valid reason to discount Plaintiff's testimony. (AR 96; ECF No. 18-1 at 6 [citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Batson*, 359 F.3d at 1196].)

In short, Plaintiff misstates the law. As noted above, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence *is still a relevant factor* in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857 (emphasis added) (citing 20 C.F.R. § 404.1529(c)(2)); *Lingenfelter*, 504 F.3d at 1040; *Burch*, 400 F.3d at 681; *Reddick*, 157 F.3d at 722; *see also Batson*, 359 F.3d at 1196 (ALJ properly relied on objective findings and physician's opinions to discredit claimant's testimony regarding functional limitations).

It is apparent to the Court that the ALJ's reason for discrediting the severity of Plaintiff's claimed limitations is based not merely on a finding that the objective medical evidence does not affirmatively support those limitations; rather, it is based on the fact that the medical evidence contradicts and is inconsistent with Plaintiff's claims as to the severity of her limitations. Without reciting the entire analysis, the Court will summarize those findings which contradict her testimony that she is unable to work as a customer service representative. (*See* AR 96-99.) Of note, the Plaintiff has not identified medical evidence anywhere in the Administrative Record that supports her claimed limitations, nor in her motion does she take issue with any of the findings made by the ALJ regarding his summary of the medical evidence.

First, the ALJ went through a chronology of Plaintiff's medical history and

treatment. It begins with her work related injury on June 4, 2012 in which she injured her right ankle and left shoulder. An MRI of the left shoulder showed a possible superior labral tear, but her rotator cuff appeared intact. (AR 97 [citing Ex. 7F at 22, 30-31].) Dr. Powers, a treating physician, repeatedly opined that Plaintiff was limited to lifting, pushing, and pulling up to ten pounds, no overhead work, and no prolonged standing or walking. (AR 98 [citing Ex. 7F at 18, 42, 58-59, 62, 63, 69].) In August 2012, Dr. Powers updated his assessment, limiting Plaintiff to lifting, pushing, and pulling up to twenty pounds, no overhead work, and no prolonged standing and/or walking. In September 2013, Dr. Powers opined that Plaintiff could return to work without any restrictions. (AR 98 [citing Exs. 7F at 69, 8F at 16].) Thus, this medical evidence contradicted Plaintiff's claims that she could not work due to her shoulder injury.[10]

In regards to her ankle injury, an MRI revealed chronic anterior talofibular ligament tear, osteonecrosis of the talar dome, and chronic tear of the peroneus longus. (AR 97.) In September 2012, Plaintiff attended an orthopedic consultative examination performed by Vicente Bernabe, D.O. regarding her right ankle pain, left shoulder pain, and low back pain. Based on that examination, Dr. Bernabe opined that the Plaintiff could lift and carry fifty pounds occasionally, and twenty-five pounds frequently. She could walk and stand six hours out of an eight hour day, and could occasionally perform overhead motion with the left upper extremity. (AR 97.) Although this assessment has Plaintiff being able to perform a range of work at the *medium* exertional level, the ALJ gave little weight to it. His rationale was based on the fact that other evidence received after that assessment showed that Plaintiff was more limited. (AR 99.) This type of detailed analysis conducted

---

[10] Prior to August 2012, Dr. Powers had repeatedly opined that Plaintiff was restricted to lifting, pushing, and pulling up to ten pounds. (AR 98 [citing Ex 7F].) Ultimately, the ALJ did not adopt this ten pound weight restriction, finding it to be overly restrictive in light of the overall evidence. He specifically noted that Dr. Powers documented that Plaintiff "made questionable effort during grip strength testing." (AR 98 [citing Ex. 7F at 38].) At the same time, the ALJ also did not adopt Dr. Powers' September 2013 opinion that Plaintiff could return to work without *any* restrictions, instead opting for an RFC which took into account her testimony and expressed subjective limitations. (AR 98-99 [citing Exs. 7F at 69, 8F at 16].)

16cv1773-W-BGS

by the ALJ is a far cry from Plaintiff's contention that "the ALJ simply reject[ed her] testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence." (ECF No. 15-1 at 7.)

The ALJ noted that in April 2013 the Plaintiff underwent partial resection of the peroneal tendon tear, peroneal tendon tenosynovectomy, and exostectomy of lateral calcaneal wall. (AR 97-98 [citing Ex. 3F].) Following this surgery, in June 2013, Plaintiff was examined by Dr. Alavynejad, a treating physician. At that exam Dr. Alavynejad reported that Plaintiff did not walk with a limp, and had only mild tenderness to palpation, 4/5 strength with eversion, and good range of motion. On August 20, 2013 Dr. Alavynejad examined Plaintiff, and found she had 5/5 muscle strength, full range of motion of the ankle joint, and no tenderness to palpitation. (AR 98 [citing Exs. 4F and 9F].) The ALJ nonetheless considered Plaintiff's subjective complaints related to this condition, and factored them into Plaintiff's RFC by limiting her to light work with additional limitations, such as standing/walking only four hours out of an eight hour day. Of note, by August 2013, Dr. Alavynejad assessed that Plaintiff could return to work with limited standing and walking for six hours a day, and pulling and pushing no more than twenty-five pounds. (AR 98 [citing Exs. 9F at 4-5, 10, 20, 26-28].) Additionally, the ALJ specifically noted that "the objective medical evidence does not show that [Plaintiff's] recovery time [after her surgery] lasted 12 continuous months." (AR 98); *see* 42 U.S.C. § 423(d)(1)(A) (for disability to be found, the condition cannot be temporary and must be expected to last over at least a twelve month period).

The ALJ gave great weight to the opinion provided by the state agency medical consultant at the reconsideration level because he had the opportunity to review additional evidence. (AR 99 [citing Exs. 6A and 8A].) The medical consultant after review of said evidence (*see* AR 64-88) opined that the Plaintiff could perform work at the light exertional level. The ALJ found this opinion consistent with the overall objective findings and accommodated Plaintiff's subjective complaints. (AR 99.)

In sum, contrary to Plaintiff's contention, the ALJ did not solely and completely

16cv1773-W-BGS

discredit her testimony because it was not substantiated affirmatively by objective medical evidence. He properly considered the objective medical records as well as medical opinion evidence as a factor in assessing the severity of Plaintiff's pain and its disabling effects. As discussed above, medical records and opinions cited by the ALJ do contradict the severity of her claimed limitations.

Accordingly, as discussed above, the ALJ considered the entire case record and reasonably discounted Plaintiff's allegations of disabling pain based on other factors in addition to the contrary objective medical evidence. Therefore, **IT IS RECOMMENDED** that the Court find the ALJ provided a "specific, clear and convincing" reason supported by substantial evidence for discounting Plaintiff's credibility as to her subjective limitations on the ground discussed in this section.

## VII. CONCLUSION

Based on the above reasoning, **IT IS RECOMMENED** that the Court find the ALJ properly set forth "specific, clear and convincing" reasons supported by substantial evidence for discounting Plaintiff's credibility as to her testimony regarding her subjective limitations. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment (ECF No. 15) be **DENIED** and that Commissioner's cross-motion for summary judgment (ECF No. 18) be **GRANTED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **August 22, 2017**, any party to this action may file written objections with the Court and serve a copy to all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 5, 2017**.

Dated: August 8, 2017

Hon. Bernard G. Skomal
United States Magistrate Judge

32

16cv1773-W-BGS